**No. 25-6142**

# UNITED STATE COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LANDLORDS AND PROPERTY MANAGEMENT COMPANIES IN
ALAMEDA COUNTY,

Plaintiffs – Appellants, v.

COUNTY OF ALAMEDA; et al.,

Defendants – Appellees,

ALLIANCE OF CALIFORNIANS FOR COMMUNITY EMPOWERMENT
ACTION,

Intervenor – Defendant – Appellee.

On Appeal from the United States District Court for
the Northern District of California
3:22-cv-01274-LB

# BRIEF OF AMICUS CURIAE BERKELEY RENT
# STABILIZATION BOARD IN SUPPORT OF APPELLEES IN
# SUPPORT OF AFFIRMANCE

Oliver Ehlinger, California State Bar No. 278281
Berkeley Rent Stabilization Board
2000 Center Street, Suite 400
Berkeley, CA 94704
Tel: (510) 981-4924
oehlinger@berkeleyca.gov

*Attorney for Amicus Curiae*
*Berkeley Rent Stabilization Board*

1

# TABLE OF CONTENTS

**IDENTITY AND INTEREST OF AMICUS CURIAE**................................................................4

**BRIEF OF AMICUS CURIAE**..........................................................................................6

**I.    INTRODUCTION**.................................................................................................6

**II.   ARGUMENT** ....................................................................................................6

A. *Per Se* Physical Takings are Found Only in "Very Narrow" Circumstances, and a Broad Interpretation Would Impinge on the State's Police Powers and is Contrary to the Supreme Court's Consistent Line of Cases Affirming the States' Power to Regulate Landlord-Tenant Relations................................................................................................................6

B. The Eviction Moratoriums Do Not Constitute a *Per Se* Physical Taking Under the Controlling Authority Here: *Yee*.......................................................................................9

C.  The Ordinances preserved Eviction Pathways and Were Paired with Direct Financial Compensation to Landlords.........................................................................................16

**III.  CONCLUSION**...............................................................................................19

# **TABLE OF AUTHORITIES**

**Cases**

*Ala. Ass'n of Realtors v. HHS,*594 U.S. 758, 141 S.Ct. 2485 (2021) ..................... 15

*Ballinger v. City of Oakland*, 24 F.4th 1287 (9th Cir. 2022) ......................................14

*California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 455.) ...................................................................................................................................8

*CDK Global LLC v. Brnovich*, 16 F.4th 1266 (9th Cir. 2021) ...................................14

*Cedar Point Nursery v. Hassid,* 594 U.S. 139, 141 S.Ct. 2063, 2080 (2021).........10

*FCC v. Florida Power Corp.*, 480 U.S. 245, 252 (1987) ....................................9, 13

*Heights Apts., LLC v Walz*, 30 F.4th 720 (8th Cir. 2022) ................................. 15, 16

*Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 295 (1981).................................................................................................................8

*Id*8

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 73 L. Ed. 2d 868, 102S. Ct. 3164 (1982)........................................................................................7, 9

*Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646 (1978)...............................................................................................7

*Pumpelly v. Green Bay Co.*, 80 U.S. 166...................................................................10

*Yee v. City of Escondido*, 503 U.S. 519 (1992)........................................7, 10, 11, 13

**Local Regulations**

Rent Board Regulation 1312......................................................................................17

**Constitutional Provisions**

Cal. Const., art. XI, § 7..............................................................................................8

**Other Authority**

Alameda County Ordinance No. 2020-32..................................................................12

Oakland Ordinance No. 13589...................................................................................12

## IDENTITY AND INTEREST OF AMICUS CURIAE

The Berkeley Rent Stabilization Board ("Rent Board") is the public agency charged with administering and enforcing Berkeley's rent stabilization and eviction-control laws and is the undisputed sole authority in the City of Berkeley ("City") for applying the City's rent control system. (*See City of Berkeley v. City of Berkeley Rent Stabilization Bd.*, 27 Cal. App. 4th 951, 972, 976 (1994)).

The Rent Board has a strong institutional interest in this appeal because Plaintiffs' position, if adopted, would call into question decades of United States Supreme Court precedent recognizing the broad authority of state and local governments to regulate landlord-tenant relationships under their police powers. In particular, the Rent Board is concerned by Plaintiffs' repeated and incorrect assertion that recent Supreme Court decisions have undermined or effectively overruled *Yee v. City of Escondido*, 503 U.S. 519 (1992), or its foundational holding that rent control and related eviction regulations do not affect per se physical takings. Furthermore, consistent with its statutory role, the Rent Board provides the Court with concrete information regarding eviction categories that continued to proceed during the COVID-19 emergency and rental-assistance programs that directly compensated Berkeley landlords, thereby refuting Plaintiffs' contrary claims.

Moreover, the City is in Alameda County, and the Rent Board therefore has a strong interest in any matter that could lead to the evictions, homelessness, and the displacement of potentially thousands of tenants in Alameda County. The Rent Board submits this brief to address these issues and to explain why *Yee* remains controlling and dispositive here.

Amicus curiae, through their respective counsel, have consented to the filing of this amicus curiae brief. No party, or counsel for any party, authored the attached brief, in whole or in part, or made any monetary contribution toward the preparation or submission of the brief. No person contributed money that was intended to fund preparing or submitting the brief.

In addition, Amicus Curiae received consent from all parties to this case to file the following briefing.

# BRIEF OF AMICUS CURIAE

## I. INTRODUCTION

This appeal presents a narrow constitutional question that is already answered by controlling Supreme Court precedent. The temporary eviction moratoria at issue did not authorize any compelled physical occupation of private property and instead reflect the longstanding authority of state and local governments to regulate landlord-tenant relationships to protect public health and welfare. The Rent Board submits this brief to provide both legal context and concrete factual evidence demonstrating that the challenged measures fall squarely within the regulatory framework upheld in *Yee v. City of Escondido* and related cases.

## II. ARGUMENT

A. *Per Se* Physical Takings are Found Only in "Very Narrow" Circumstances, and a Broad Interpretation Would Impinge on the State's Police Powers and is Contrary to the Supreme Court's Consistent Line of Cases Affirming the States' Power to Regulate Landlord-Tenant Relations.

The Takings Clause of the Fifth Amendment provides: "Nor shall private property be taken for public use, without just compensation." As the Supreme Court instructed in *Yee*, most cases interpreting the clause fall within two distinct classifications:

> Where the government authorizes a physical occupation of property (or actually takes title), the Takings Clause generally requires compensation.

6

> See, *e. g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 73 L. Ed. 2d 868, 102S. Ct. 3164 (1982). But where the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole. See*, e. g., Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 123-125, 57 L. Ed. 2d 631, 98 S. Ct. 2646 (1978). The first category of cases requires courts to apply a clear rule; the second necessarily entails complex factual assessments of the purposes and economic effects of government actions.

(*Yee v. City of Escondido*, 503 U.S. 519, 522-23 (1992)).

In *Loretto*, a case in which the Supreme Court applied the first test to hold that a state law constituted a *per se* physical taking on its face, the Court instructed: "Our holding today is very narrow." (*Loretto*, 458 U.S. at 441.) While affirming that a permanent physical occupation of property is a taking, the Court further emphasized the narrow scope of its holding by recognizing: "We do not, however, question the equally substantial authority upholding a State's broad power to impose appropriate restrictions upon an owner's *use* of his property." (*Id.*, emphasis in original.) Plaintiffs' case here is, at best, a regulatory taking case, and Plaintiffs' implied attempt to argue for a broad application of *Loretto* and other cases where the Court has found a *per se* physical taking is entirely misplaced.

7

A facial challenge to a statute or ordinance is an "uphill battle." (*Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 295 (1981).) Under a facial challenge to a statute, the application of the statute on the plaintiffs' operations or the statute's effect on specific parcels of land are not at issue: rather, "the only issue" is whether the "mere enactment" of the statute constitutes a taking. (*Id.*) "A statute regulating the uses that can be made of property effects a taking if it 'denies an owner economically viable use of his land.'" (*Id.*) In California, municipalities and counties have broad authority, under their general police power, to regulate the use of real property within their jurisdiction. (Cal. Const., art. XI, § 7; *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 455.) The variety and range of permissible land use regulations are extensive, and as long as the regulation bears a reasonable relationship to the public welfare, the restriction or regulation is constitutionally permissible. (*Id.*, 61 Cal.4th at 455 [rejecting *per se* taking challenge to statute requiring builders to permanently require new development projects to sell 15 percent of units at affordable prices]; citing to, among other authorities, *Schad v. Mount Ephraim*, 452 U.S. 61, 68 (1981); *Euclid v. Ambler*, 272 U.S. 365 (1926).)

In the context of landlord-tenant matters, in *Loretto* itself the Supreme Court recognized that it has in fact "consistently affirmed that States have

broad power to regulate housing conditions in general *and the landlord-tenant relationship in particular without paying compensation for all economic injuries that entails*." (*Loretto*, 458 U.S. at 440, emphasis added, citing to: *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964) (discrimination in places of public accommodation); *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80 (1946) (fire regulation); *Bowles v. Willingham*, 321 U.S. 503 (1944) (rent control); *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934) (mortgage moratorium); *Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242 (1922) (emergency housing law); *Block v. Hirsh*, 256 U.S. 135 (1921) (rent control); see also *FCC v. Florida Power Corp.*, 480 U.S. 245, 252 (1987) ("statutes regulating the economic relations of landlords and tenants and not *per se* takings"). Indeed, as discussed in Section B, *infra*, because the ordinances at issue *on their face* do not require landlords to suffer the physical occupation of their property by a third party, the ordinances are to be analyzed under the regulatory taking classification of cases, and do not come within the "very narrow" classification of *per se* physical takings cases. (*Yee*, 503 U.S. at 522-523; *Loretto*, 458 U.S. at 440-441.)

B. The Eviction Moratoriums Do Not Constitute a *Per Se* Physical Taking Under the Controlling Authority Here: *Yee*.

In *Yee*, the plaintiffs contended that the city's permanently-in-place rent control ordinance transferred no less than a right of physical occupation of the

plaintiffs' land to the renters of their property. (*Yee*, 503 U.S. at 527.) Similarly, here, Plaintiffs contend that the temporary eviction moratorium ordinances at issue have somehow permanently taken from them the "right to exclude" their tenants. Under *Yee,* however, "[t]his argument, while perhaps within the scope of our regulatory taking cases, cannot be squared easily with our cases on physical takings." (*Id.*)

"The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." (*Id*. at 527, emphasis in original.) "This requirement of required acquiescence is at the heart of the concept of occupation." (*Id.*, citing *Florida Power*, 480 U.S. at 252.) "Thus whether the government floods a landowner's property, *Pumpelly v. Green Bay Co.*, 80 U.S. 166, or does no more than require the landowner to suffer the installation of a cable, *Loretto, supra*, the Takings Clause requires compensation if the government authorizes a compelled physical invasion of property." (*Yee*, 503 U.S. at 527 [citations omitted]; see also, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 161, 141 S.Ct. 2063, 2080 (2021) ("The access regulation grants labor organizations a right to invade the growers' property. It therefore constitutes a *per se* physical taking.") Unlike these cases, but exactly as in *Yee*, the eviction moratorium ordinances at issue here authorize no such thing. (*Yee*, 503 U.S. at 527.)

"Because they voluntarily open their property to occupation by others, petitioners cannot assert a *per se* right to compensation based on their inability to exclude particular individuals." (*Yee*, 503 U.S. at 531; citing *Heart of Atlanta*, 379 U.S. at 261, and at 259 ["Appellant has no 'right' to select its guests as it sees fit, free from government regulation"]; *Prune-Yard Shopping Center*, 447 U.S. at 82-84.)[1] Yet Plaintiffs' position appears to rely almost entirely on generalized allegations that the ordinances benefited unspecified unauthorized or problematic occupants, even though the types of conduct described fall within categories for which eviction proceedings remained available under the ordinances. (See Opening Brief at 3 and Sections B1–B8.)

The types of conduct described by Plaintiffs, such as nuisance, criminal activity, and threats to health or safety, fell squarely within the ordinances' express exceptions during the COVID-19 emergency period. The Oakland moratorium, for example, expressly permitted eviction where the renter poses an imminent threat to the health or safety of other occupants of the property, notwithstanding the general temporary defenses to unlawful detainer.[2]

---

[1] As noted by the Ninth Circuit, the Supreme Court in *Cedar Point* reaffirmed *Prune Yard*. (*Cedar Point*, 594 U.S. 139, 154-55, 141 S.Ct. at 2076-77.) Moreover, as noted in a recent district court decision, *Cedar Point* does not overrule *Yee* or undermine the legal underpinnings of *Yee*. (*Jevons v. Inslee*, 561 F.Supp.3d 1082, 1107 (E.D. Wash. 2021).) "Indeed, in *Cedar Point Nursery*, the Court cited *Yee* for general takings principles, and *Yee* is still binding law on this Court." (*Id.*)

Likewise, the County's ordinance allowed eviction where a resident posed an imminent threat to health or safety and preserved other specified bases such as compliance with court or government orders.[3] Notably, Plaintiffs' brief does not allege that they attempted to pursue eviction actions in court and were prevented from prevailing. Therefore, the record does not support Plaintiffs' assertion that property owners were categorically required to house unauthorized or dangerous occupants without recourse.

In addition, publicly funded rental-assistance programs operated concurrently with these temporary restrictions and provided direct payments to landlords to compensate for unpaid rent, undermining Plaintiffs' claim that the challenged measures forced owners alone to bear the financial burden of pandemic housing protections. Plaintiffs' allegations instead rest largely on generalized and anecdotal assertions that misconstrue the scope and operation of the moratoria. While the City and County are best positioned to describe implementation of their respective ordinances in detail, nothing on the face of those measures indicates that they were intended to shield trespassers or other unauthorized occupants, and that was not how comparable protections operated in Berkeley, where eviction actions based on nuisance, criminal

---

[2] Oakland Ordinance No. 13589 C.M.S., as amended.
[3] See Alameda County Ordinance No. 2020-32, as amended.

conduct, or threats to health and safety continued to proceed, as illustrated below.

Moreover, as in *Yee,* "[a]t least on the face of the regulatory scheme, neither the City nor the State compels petitioners, once they have rented their property to tenants, to continue to do so." (*Yee*, 503 U.S. at 527-528.) That is because the law at issue in *Yee* provided that the owner who wished to change the use of his land to evict his tenants could do so under the laws at issue, albeit with 6- or 12-months' notice. (*Id.*) So, too, here, where both ordinances provide exceptions for landlords who wish to change the use of their land to evict their tenants in accordance with the State of California's Ellis Act. Under *Yee*, these exceptions further foreclose their claim for *per se* physical taking:

> Put bluntly, no government has required any physical invasion of petitioners' property. Petitioners' tenants were invited by Petitioners, not forced upon them by the government. See *Florida Power, supra,* at [480 U.S.] 252-253. While the "right to exclude" is doubtless, as petitioners assert, "one of the most essential sticks in the bundle of rights that are commonly characterized as property," (citation omitted), we do not find that right to have been taken from petitioners on the mere face of the Escondido ordinance.

(*Yee,* 503 U.S. at 528.) The ordinances at issue in this case do not authorize the physical occupation of Plaintiffs' property by third parties; rather, only persons voluntarily admitted to the property could invoke the temporary protections of the eviction moratoria, which expressly allowed evictions based on threats to health or safety and other specified exceptions. The ordinances regulate the *use*

13

of Plaintiffs' property and were enacted under the City's and County's broad police power for reasons indisputably for the public welfare during an unprecedented health crisis. There is no actionable *per se* physical taking on the face of these ordinances.

As discussed above, the cases, including *Loretto* which Plaintiffs cite nine times and *Cedar Point* which is cited ten times, are distinguishable and inapposite because those cases do involve government required physical invasion of the owners' property by uninvited third parties. Two recent cases from the Ninth Circuit follow *Yee* and its progeny and distinguish *Loretto* and its progeny. These cases hold that when the property owner voluntarily authorizes use of its property and the property owners have the ability to terminate the relationship, the legislative act is a mere regulation of the *use* of the property, and not a *per se* physical taking. (*CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1282 (9th Cir. 2021); *Ballinger v. City of Oakland*, 24 F.4th 1287, 1293-1294 (9th Cir. 2022), *cert. denied,* 2022 U.S. LEXIS 2739 (U.S., June 6, 2022).)

Other cases relied on by Plaintiffs are similarly distinguishable and/or inapposite. In *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 141 S.Ct. 2485 (2021), the Supreme Court addressed the power of the CDC to issue a nationwide eviction moratorium, not whether such a moratorium

14

enacted by elected government officials constituted a *per se* physical taking on its face, the issue in this case. As the Court concluded: "It is up to the Congress, not the CDC, to decide whether the public interest merits further action here. *** If a federally imposed eviction moratorium is to continue, Congress must specifically authorize it." (*Id.* at 2490.) The Oakland City Council and the Board of Supervisors of the County of Alameda have made that specific determination under their constitutional police power, their ordinances bear a reasonable relationship to the public welfare, and therefore these regulations are constitutionally permissible on their face. (*CBIA*, 61 Cal.4th at 455; *Schad*, 452 U.S. at 68; *Ala. Ass'n*, 141 S.Ct. at 2490 ("It is indisputable that the public has a strong interest in combating the spread of the COVID-19 Delta variant.")

*Heights Apts., LLC v Walz*, 30 F.4th 720, 733 (8th Cir. 2022), erroneously relies on a misreading of the facts in the *Yee* case: "The landlords in *Yee* sought to exclude future or incoming tenants rather than existing tenants." As pointed out in an opinion dissenting from the denial of rehearing en banc concurred in by four Eighth Circuit appellate court justices, the landlords in *Yee* in fact complained of their inability to evict "*tenants of mobilehomes presently in The Park,* as well as the successors in interest of such tenants." (*Heights Apts., LLC v. Walz,* 39 F.4th 479, 480 (8th Cir. 2022) The dissenters then cited to the text of *Yee*

cited above in which the Supreme Court held that the disputed laws did not affect a *per se* taking because the landlords voluntarily rented their land to mobile homeowners, and could change the use of their land if they wished by evicting the tenants for limited reasons with 6 or 12 months' notice. (*Id.*) The Rent Board respectfully submits that the panel decision is wrongly decided, for the reasons addressed by the dissenting judges, and should not be followed by this Court.[4]

C. The Ordinances preserved Eviction Pathways and Were Paired with Direct Financial Compensation to Landlords.

Plaintiffs' characterization of the eviction moratoria as eliminating the right to exclude is further undermined by how the various ordinances operated in practice throughout the Bay Area. Throughout the emergency period, the City of Oakland, Alameda County, and the City of Berkeley expressly preserved eviction authority for enumerated categories, including cases involving alleged threats to health or safety, nuisance conduct, illegal activity, and refusal of lawful access. (See B.M.C. Sec. 13.110.020.C.)

As discussed above, the ordinances did not insulate dangerous conduct from eviction action. On the contrary, they expressly preserved eviction remedies for imminent health or safety threats and other defined bases. Plaintiffs nowhere allege that they pursued such actions and were prevented from prevailing.

---

[4] A decision of another appellate circuit may be persuasive but is not binding on other courts of appeals, or this Court. *Hart v. Massanari*, 266 F. 3d 1155, 1172-73 (9th Cir. 2001). The 8th Circuit panel decision in *Heights Apts.* is not persuasive.

16

Accordingly, there is no factual basis for the assertion that owners were forced to indefinitely house unsafe occupants without recourse.

The Rent Board's experience administering its own analogous protections further confirms that eviction activity based on conduct-related grounds continued during the emergency period. Under the Berkeley Rent Ordinance, landlords are required to file with the Rent Board a copy of any notice to quit or notice of termination, as well as any summons and complaint in an unlawful detainer action, within three business days after service on the tenant. (Rent Board Regulation 1312.) Berkeley's eviction moratorium was in effect from March 2020 through August 31, 2023. During that period, the Rent Board recorded 564 eviction filings, many of which were based on grounds expressly permitted under the temporary restrictions, including nuisance-related conduct, Ellis Act withdrawals, and other allowable bases.[5]

Because compliance with the filing requirement is not universal, the Rent Board's records likely undercount the total number of actions that proceeded during this period. Even so, the documented filings confirm that eviction proceedings were not categorically suspended, but instead continued where the ordinances allowed, including for conduct-based grounds.

---

[5] Rent Board Database, 3DI, Eviction Notice Filings Report (March 2020 – August 31, 2023) (report generated February 9, 2026) (on file with amicus).

In further illustration, from May 2021 through August 2023, one single nonprofit organization defending tenants in Berkeley, Eviction Defense Center, handled 28 unlawful detainer actions alleging lease violations or nuisance conduct, and averaged approximately seven monthly intakes involving notices to quit based on alleged behavioral violations.[6] Based on this one specific non-profit's contemporaneous case-tracking and intake records, landlords regularly pursued eviction actions for alleged health-and-safety and nuisance grounds during the moratorium period, with outcomes turning on the seriousness and substantiation of the allegations.

At the same time, Berkeley landlords received substantial direct financial compensation through emergency rental-assistance programs. During the moratorium period, nonprofit administrators report that Berkeley landlords received over $6.7 million in rental-assistance payments, including $5,643,139.60 administered through the City-funded program operated by the Eviction Defense Center, over $1 million administered by East Bay Community Law Center, and approximately $65,000 through Alameda County's Housing Secure program.[7] These programs were specifically structured to offset landlord

---

[6] Information provided by Anne Omura, Executive Director, Eviction Defense Center, in email correspondence with amicus (February 6, 2026) (on file with amicus).
[7] See Id.

18

losses during the temporary regulation of certain nonpayment evictions, further undermining Plaintiffs' claims.

These real-world facts reinforce what *Yee* makes clear on the face of the ordinances: landlords were not required to acquiesce in permanent physical occupation but instead operated under a temporary regulatory framework that preserved eviction authority for enumerated grounds while providing direct financial mitigation. That framework reflects economic regulation, not a per se physical taking.

## III.   CONCLUSION

For all the reasons stated above, and for the reasons stated in the briefs of the City and County, the Rent Board respectfully submits that Plaintiffs' appeal should be denied.


Dated: February 17, 2026

Respectfully submitted,

s/Oliver Ehlinger
Staff Attorney
Berkeley Rent Stabilization Board

2000 Center Street, Suite 400
Berkeley, CA 94704
Tel: (510) 981-4924
oehlinger@berkeleyca.gov

*Attorney for Amicus Curiae*
*Berkeley Rent Stabilization Board*

19

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with type-volume limitations set forth in FRAP 29(a)(5) and FRAP 29(d). This brief is proportionately spaced, contains 3,455 words, and has a typeface of 14 points or more.

Dated: February 17, 2026
s/Oliver Ehlinger
Attorney for Amicus Curiae
*Berkeley Rent Stabilization Board*